IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Alan Werdehoff, | ) |
|     Plaintiff, | ) Case No. 19-cv-8278 <br> ) <br> ) COMPLAINT FOR <br> ) USERRA VIOLATIONS |
| v. | ) <br> ) |
| Chicago Cubs Baseball Club, LLC, | ) <br> ) **Jury Demanded** |
|     Defendant. | ) |

## COMPLAINT

Now comes Plaintiff, Alan Werdehoff, by and through counsel, and complains against Defendant, Chicago Cubs Baseball Club, LLC, as follows:

### Jurisdiction and Venue

1. This action arises under the Uniformed Services Employment and Reemployment Rights Act of 1994 (hereinafter referred to as "USERRA"), as amended, codified at 38 U.S.C. § 4301, *et seq*.

2. Accordingly, this Court has jurisdiction to hear this case pursuant to 38 U.S.C. § 4323(b)(3), as well as 28 U.S.C. § 1331.

3. Plaintiff also brings Illinois state law claims under the Service Member Employment and Reemployment Rights Act (hereinafter referred to as "ISERRA"), codified at 330 ILCS 61/1-1, *et seq*.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the ISERRA claims are so related to the USERRA claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this district under 38 U.S.C. § 4323(c)(2) because Chicago Cubs Baseball Club, LLC maintains a place of business in Chicago, Illinois. Indeed, the principal office of

Chicago Cubs Baseball Club, LLC is located at 1060 West Addison Street, Chicago, Illinois 60613 (Wrigley Field).

6. Venue is also proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and because Chicago Cubs Baseball Club, LLC resides here.

7. This Court has personal jurisdiction over Chicago Cubs Baseball Club, LLC, given that its principal office is in Chicago, Illinois, and given that Plaintiff's claims arise from conduct that Chicago Cubs Baseball Club, LLC engaged in within Illinois.

## Parties

8. Plaintiff, Alan Werdehoff (hereinafter referred to as "Werdehoff"), is and was, at all material times, a citizen of the United States, residing within the jurisdiction of this Court.

9. Werdehoff is and was, at all material times, on inactive duty training status with the Air National Guard.

10. At all material times, Werdehoff's inactive duty training status with the Air National Guard required him to attend monthly weekend training drills, as well as other annual training days.

11. Werdehoff was employed by Chicago Cubs Baseball Club, LLC from March 15, 2018 through March 29, 2019.

12. Chicago Cubs Baseball Club, LLC (hereinafter referred to as the "Cubs") is a Delaware LLC and an employer under 38 U.S.C. § 4303(4)(A).

## Facts

13. On March 15, 2018, the Cubs hired Werdehoff to work as a part-time Logistics Supervisor.

2

14. Throughout 2018, due to his inactive duty training status with the Air National Guard, Werdehoff was required to travel out of state to attend monthly weekend training drills, as well as other annual training days.

15. In order to attend Air National Guard training, Werdehoff was occasionally required to be absent from work with the Cubs.

16. Sometime after Werdehoff's first work absence due to Air National Guard training, Regan Duval, another Cubs employee in the logistics department, began complaining about Werdehoff's work attendance to other Logistics Supervisors.

17. Prior to December 2, 2018, Werdehoff learned from multiple coworkers that Regan Duval had been complaining about Werdehoff's work attendance and had been unfairly criticizing him because of it.

18. Then, on December 2, 2018, the Air National Guard notified Werdehoff that it required his service from December 11, 2018 through December 14, 2018.

19. That same day, December 2, 2018, Werdehoff sent a text message to several fellow Cubs Logistics Supervisors informing them that, due to Air National Guard orders, he would be absent from December 11, 2018 through December 14, 2018.

20. The next day, December 3, 2018, a coworker informed Werdehoff that Regan Duval had, once again, complained to another Logistics Supervisor about Werdehoff's work attendance (upon learning that Werdehoff was going to be absent from December 11, 2018 through December 14, 2018).

21. So, on December 3, 2018, Werdehoff decided to complain about Regan Duval's conduct. He did so via email to Kathleen Frost, a manager in the Cubs' Logistics and Procurement department.

22. In his email to her, Werdehoff informed Kathleen Frost that he believed that Regan Duval was creating a hostile work environment on the basis of his protected status as a member of the Air National Guard by unfairly criticizing his attendance and attempting to turn other supervisors against him.

23. On December 5, 2018, Kathleen Frost instructed Werdehoff to discuss his complaint with the Cubs' human resources department.

24. On December 7, 2018, Werdehoff met with Minerva Ruiz, a Cubs human resources employee, to discuss his complaint.

25. Minerva Ruiz informed Werdehoff that, in response to his complaint, she would conduct an internal investigation.

26. Shortly after this meeting on December 7, 2018, Werdehoff provided a formal USERRA complaint to the Cubs' human resources department.

27. In that complaint, Werdehoff restated his complaint about Regan Duval's repeated criticism. Werdehoff also informed the Cubs' human resources department that Regan Duval and Alex Szoke, another Logistics Supervisor, had refused to schedule Werdehoff for work on certain days that he had requested in November because they were upset about Werdehoff's Air National Guard obligations and resulting absences.

28. Werdehoff further informed the human resources department that he had already complained about these scheduling issues to his direct supervisor, John Geitz, but that John Geitz had simply instructed Werdehoff to attempt to resolve the scheduling issue with Regan Duval, who, when asked, had refused to correct the scheduling issue, resulting in about 20 hours of lost work for Werdehoff.

29. In his complaint to the human resources department, Werdehoff wrote that he viewed the refusal to correct the scheduling issue "as an infringement on [his] protections under USERRA."

30. Subsequently, on December 12, 2018, Alex Szoke (another Logistics Supervisor) sent a text message to Werdehoff asking him if he had arranged for a coworker to cover his shifts while he was absent for Air National Guard duty.

31. Werdehoff responded to Alex Szoke and explained that he had notified Kathleen Frost, Alex Szoke himself, and two other Logistics Supervisors of his Air National Guard duty well in advance. He further explained that, by law, he was not required to arrange for others to cover his shifts while on duty.

32. In reply, Alex Szoke argued that the issue was "not about a law," and that Werdehoff could have arranged for someone to cover his shifts.

33. Later that morning, December 12, 2018, Werdehoff sent an email to Kathleen Frost and Minerva Ruiz, informing them of Alex Szoke's text messages. He attached screenshots of those text messages and explained that, under USERRA, it was not his responsibility to arrange for others to cover his shifts.

34. That same day, December 12, 2018, John Geitz called Werdehoff via telephone, while Werdehoff was on duty, presumably to discuss Werdehoff's failure to arrange for others to cover his shifts. Werdehoff did not answer because he was on duty.

35. On December 17, 2018, after Werdehoff had returned from duty, John Geitz asked Werdehoff to meet with him, and then questioned Werdehoff about his internal complaint. John Geitz criticized Werdehoff for bringing his concerns to Kathleen Frost and told Werdehoff that he learns of everything that his subordinates bring to her attention.

36. John Geitz further questioned Werdehoff about taking his complaint to the human resources department, and specifically asked Werdehoff what he was trying to "get out of it."

37. Werdehoff explained to John Geitz that that Kathleen Frost had specifically instructed him to discuss his complaint with human resources, and John Geitz inexplicably claimed that Kathleen Frost had never told Werdehoff to do so.

38. John Geitz then told Werdehoff that his complaint was no longer going to be confidential due to the investigation, and went on to criticize Werdehoff for leaving work early on several occasions in the past (even though John Geitz had always allowed other Logistics Supervisors to leave early for similar issues).

39. The Cubs' human resources department then waited until December 20, 2018 to begin its investigation into Werdehoff's complaint.

40. On December 21, 2018, as part of the investigation, Minerva Ruiz and Kathleen Frost interviewed Werdehoff.

41. During the interview, Werdehoff informed them of his December 17, 2018 interaction with John Geitz, explaining that he felt that it was intimidating.

42. Instead of taking any action against John Geitz, Alex Szoke, or Regan Duval, though, Minerva Ruiz informed Werdehoff, during their meeting, that from then on, he was going to be required to provide the Cubs with a formal command notification letter from the Air National Guard every time he was called to duty.

43. However, under USERRA, an "employee's notice to the employer [of his intent to leave to perform service in the uniformed services] may be either verbal or written… The notice may be informal and does not need to follow any particular format." 20 C.F.R. § 1002.85(c).

44. Subsequently, on December 28, 2018, Werdehoff sent Minerva Ruiz and John Geitz his 2019 Air National Guard weekend drill schedule.

6

45. Then, on January 3, 2019, John Geitz called the Logistics Supervisors together for a group meeting.

46. At that meeting, John Geitz told Werdehoff that he needed to arrange for others to cover his shifts if he was going to be absent for Air National Guard duty.

47. Werdehoff explained to John Geitz that requiring him to arrange to have others cover his shifts was unlawful, and John Geitz responded by telling Werdehoff that his military duty absences were no different than another employee asking to take a day off.

48. However, under USERRA, an "employee is not required to ask for or get his or her employer's permission to leave to perform service in the uniformed services." 20 C.F.R. § 1002.87 Nor is an employee responsible for arranging to have other employees cover his shifts while on duty—he "is only required to give the employer notice of pending service." *Id.* The same is true under ISERRA. 330 ILCS 61/5-5(2).

49. Additionally, at the meeting on January 3, 2019, Lawrence Lockridge, another Logistics Supervisor with the same level of authority as John Geitz, criticized Werdehoff's human resources complaint in front of the group.

50. On January 4, 2019, Werdehoff reported to Minerva Ruiz via email that John Geitz was unlawfully requiring him to arrange for others to cover his shifts when absent due to Air National Guard duty.

51. Minerva Ruiz did not respond to Werdehoff's January 4, 2019 complaint.

52. On January 6, 2019, Werdehoff sent an email to John Geitz and Minerva Ruiz to inform them that he would be absent due to Air National Guard duty from January 12, 2019 through January 14, 2019.

53. John Geitz did not respond to Werdehoff's January 6, 2019 email.

54. Shortly thereafter, Werdehoff text messaged his fellow Logistics Supervisors to inform them that, due to Air National Guard duty, he would be absent from January 12, 2019 through January 14, 2019.

55. Alex Szoke responded, "is this you asking us to cover your shifts?"

56. Subsequently, the Cubs began reducing Werdehoff's scheduled hours, thereby limiting his pay substantially.

57. On February 8, 2019, Werdehoff checked the Logistics Supervisors' schedule and noticed that he had not been scheduled to work on two Saturdays, February 8, 2019 and February 23, 2019, for which he had marked himself as available to work.

58. Prior to February of 2019, Werdehoff had worked all Saturdays that he marked himself as available for (unless he ended up getting called for duty or using vacation time).

59. Further, from the date of Werdehoff's hiring to February of 2019, John Geitz had always scheduled three Logistics Supervisors to work on Saturdays.

60. However, instead of scheduling three supervisors to work on February 8, 2019 and February 23, 2019, John Geitz only scheduled two supervisors to work.

61. At the same time, John Geitz scheduled Alex Szoke for a full 40-hour week during the week of February 23, 2019, despite the fact that he was a part-time employee.

62. There was no justifiable reason to schedule two supervisors to work those Saturdays instead of three supervisors.

63. Indeed, prior to eliminating these shifts, John Geitz had stated in front of Werdehoff and others that, in order to punish employees, he would simply cut their hours.

64. By eliminating these two shifts, John Geitz reduced Werdehoff's February working hours by 14 hours (from 36 hours to 22 hours).

65. Later that day, February 8, 2019, Werdehoff sent an email to Minerva Ruiz complaining about his reduction in hours.

66. In his email, Werdehoff explained that John Geitz's decision to reduce his hours immediately following his USERRA complaint seemed to constitute unlawful retaliation, and that, as a result, he would be filing a formal USERRA complaint with the U.S. Department of Labor.

67. On February 8, 2019, Werdehoff did file a complaint with the U.S. Department of Labor, alleging that the Cubs had unlawfully required him to arrange to have others cover his shifts while absent for Air National Guard Duty and that the Cubs had unlawfully reduced his working hours because of his internal USERRA complaint.

68. Werdehoff met with Minerva Ruiz about his February 8, 2019 complaint on February 13, 2019.

69. At that meeting, Minerva Ruiz claimed that the reduction in hours was due to winter staff reductions.

70. However, John Geitz did not reduce the hours of any other Logistics Supervisors.

71. Minerva Ruiz also told Werdehoff that she would follow up with him about his complaint the next week.

72. Minerva Ruiz did not follow up with Werdehoff the next week.

73. On February 20, 2019, Werdehoff was notified by the Air National Guard that his service was required for a week in March.

74. That same day, February 20, 2019, Werdehoff notified Minerva Ruiz and John Geitz that he would be absent for a week in March, due to Air National Guard orders.

75. John Geitz did not respond to Werdehoff's February 20, 2019 email.

76. On February 25, 2019, Werdehoff learned that, for March of 2019, John Geitz had reduced his hours again, this time by 19 hours (from 36 hours to 17 hours).

77. On February 25, 2019, Werdehoff sent an email to Minerva Ruiz and Kathleen Frost, complaining that John Geitz had unlawfully discriminated and retaliated against him by *again* reducing his working hours.

78. On March 1, 2019, Minerva Ruiz responded, claiming that Werdehoff's hours had been reduced because he had failed to submit his availability to John Geitz by February 15, 2019.

79. However:

a. there had never been a policy requiring Logistics Supervisors to submit their availability by the 15th of the previous month;

b. John Geitz had not asked the Logistics Supervisors to provide him with their availability *until* February 19, 2019;

c. John Geitz had made this request while Werdehoff was off work, through an internal email system that Werdehoff could not have accessed while he was off work; and

d. John Geitz had not finalized the March schedule until February 25, 2019, the day after Werdehoff had provided John Geitz with his March availability.

80. In response to Minerva Ruiz's March 1, 2019 email, Werdehoff wrote that, due to the ongoing U.S. Department of Labor investigation, he planned to simply forward her response to the investigator.

81. On March 11, 2019, Werdehoff reported to Minerva Ruiz that the Cubs had not posted an ISERRA notice in his workplace, as required by law.

82. In response, Minerva Ruiz simply claimed that the notice had been posted.

83. However as of March 21, 2019, an ISERRA notice had not been posted.

84. On March 21, 2019, Werdehoff informed Minerva Ruiz, Kathleen Frost, John Geitz, Lawrence Lockridge, and another Cubs employee that he was going to inform the Illinois Attorney General that the Cubs had failed to post the mandatory ISERRA notice at his worksite.

85. On the same day, March 21, 2019, because the Cubs had continued to fail to respond to his USERRA/ISERRA complaints appropriately, Werdehoff informed the Cubs that he was resigning, and that his last day of work would be March 31, 2019.

86. However, on March 29, 2019, Minerva Ruiz called Werdehoff via telephone and informed him that he had been suspended.

87. Werdehoff returned Minerva Ruiz's call about one hour later. When Minerva Ruiz answered, Kathleen Frost was also on the line.

88. During this telephone call, Minerva Ruiz and Kathleen Frost informed Werdehoff that his employment was being terminated immediately (two days before his last scheduled day of work).

89. Minerva Ruiz and Kathleen Frost claimed that they were terminating Werdehoff because of an incident that had occurred on March 24, 2019.

90. However, Werdehoff had done nothing wrong on March 24, 2019, and other logistics employees had been disciplined less severely or not at all in the past, despite actually violating workplace rules or other laws.

91. The Cubs' conduct, as described above, was willful, wanton, intentional, malicious, and done with reckless indifference to and callous disregard for Werdehoff's rights.

92. As a result of the Cubs actions, Werdehoff has suffered significant harm.

93. Werdehoff has suffered emotionally/mentally and is reasonably certain to continue suffering emotionally/mentally.

94. Werdehoff is now required to address his termination when he applies to renew his national security clearance (as well as when he applies for other employment).

95. Werdehoff has lost wages.

96. Werdehoff has also retained attorneys to redress the violations of his rights described herein.

97. The U.S. Department of Labor was not successful in resolving Werdehoff's USERRA complaint, and the U.S. Department of Labor closed his case on April 25, 2019.

98. Werdehoff has chosen not to request that the U.S. Department of Labor re-open its investigation or refer his USERRA complaint to the U.S. Attorney General. Instead, he is filing this action in order to obtain relief.

**Count I**
*USERRA Violations*

99. Plaintiff realleges the above paragraphs as if fully set forth here.

100. First, under USERRA:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311.

101. The Cubs violated USERRA by reducing Werdehoff's working hours and then suspending and terminating him because he was a member of the Air National Guard, because he had performed service in the Air National Guard, and/or because he had an obligation to continue performing service in the Air National Guard.

12

102. The Cubs' violations of USERRA were willful in that the Cubs' agents knew their conduct was prohibited under USERRA or acted with reckless disregard for whether their conduct was prohibited by USERRA.

103. As a result of the Cubs' unlawful discrimination, Werdehoff has suffered lost wages and is now required to address his termination when he applies to renew his national security clearance (as well as when he applies for other employment).

104. Second, under USERRA:

An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

38 U.S.C. § 4311.

105. The Cubs violated USERRA by reducing Werdehoff's working hours and then suspending and terminating him because he had complained internally of USERRA violations, filed a USERRA complaint with the U.S. Department of Labor, and/or participated in the U.S. Department of Labor's investigation of his USERRA complaint.

106. The Cubs' violations of USERRA were willful in that the Cubs' agents knew their conduct was prohibited under USERRA or acted with reckless disregard for whether their conduct was prohibited by USERRA.

107. As a result of the Cubs' unlawful retaliation, Werdehoff has suffered lost wages, and is now required to address his termination when he applies to renew his national security clearance (as well as when he applies for other employment).

Wherefore, Plaintiff requests that Defendant be found liable, that a judgment be entered against it, and that Plaintiff be awarded all remedies to which he is entitled under the law, including:

    a. an order declaring that the Cubs' actions violated USERRA;

13

    b. an order requiring the Cubs to revoke Werdehoff's termination and to formally recognize his separation as having been the result of his own resignation;
    c. lost wages and benefits;
    d. prejudgment interest;
    e. liquidated damages;
    f. attorneys' fees;
    g. expert witness fees;
    h. other litigation expenses; and
    i. any additional relief that this Court considers just and proper.

## Count II
*ISERRA Violations*

108. Plaintiff realleges the above paragraphs as if fully set forth here.

109. First, under ISERRA:

A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

330 ILCS 61/5-15; 38 U.S.C. § 4311.

110. The Cubs violated ISERRA by reducing Werdehoff's working hours and then suspending and terminating him because he was a member of the Air National Guard, because he had performed service in the Air National Guard, and/or because he had an obligation to continue performing service in the Air National Guard.

111. The Cubs' conduct was willful, wanton, intentional, malicious, and done with reckless indifference to and callous disregard for Werdehoff's rights. This justifies an award of punitive damages against the Cubs, in order to punish the Cubs and to deter the Cubs and other employers from engaging in similar conduct.

112. As a result of the Cubs' unlawful discrimination, Werdehoff has been harmed mentally, emotionally, and financially, and is now required to address his termination when he applies to renew his national security clearance (as well as when he applies for other employment).

14

113. Second, under ISERRA;

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

330 ILCS 61/5-15; 38 U.S.C. § 4311.

114. The Cubs violated ISERRA by reducing Werdehoff's working hours and then suspending and terminating him because he had complained internally of USERRA/ISERRA violations, filed a USERRA complaint with the U.S. Department of Labor, informed the Cubs that he would be filing an ISERRA complaint with the Illinois Attorney General, and/or participated in the U.S. Department of Labor's investigation of his USERRA complaint.

115. The Cubs' conduct was willful, wanton, intentional, malicious, and done with reckless indifference to and callous disregard for Werdehoff's rights. This justifies an award of punitive damages against the Cubs, in order to punish the Cubs and to deter the Cubs and other employers from engaging in similar conduct.

116. As a result of the Cubs' unlawful retaliation, Werdehoff has been harmed mentally, emotionally, and financially, and is now required to address his termination when he applies to renew his national security clearance (as well as when he applies for other employment).

117. Third, under ISERRA:

> Each employer shall provide to employees entitled to rights and benefits under this Act a notice of the rights, benefits, and obligations of service member employees under this Act… The requirement for the provision of notice under this Act may be met by the posting of the notice where the employer customarily places notices for employees.

330 ILCS 61/5-20.

118. The Cubs violated ISERRA by failing to post such notice, even after Werdehoff had brought this requirement to the Cubs' attention.

Wherefore, Plaintiff requests that Defendant be found liable, that a judgment be entered against it, and that Plaintiff be awarded all remedies to which he is entitled under the law, including:

a. actual damages, including compensation for emotional distress and mental suffering;
b. punitive damages in the amount of $50,000 per violation; and
c. attorneys' fees; as well as
d. any other relief that the court deems proper, such as:
    - an order declaring that the Cubs' actions violated ISERRA;
    - an order requiring the Cubs to revoke Werdehoff's termination and to formally recognize his separation as having been the result of his own resignation;
    - an order requiring the Cubs to post the notice required by 330 ILCS 61/5-20;
    - backpay;
    - fringe benefits;
    - prejudgment interest;
    - expert witness fees;
    - costs; and
    - and any other relief required to make Werdehoff whole.

## Jury Demand

119. Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted by:

s/Steve Molitor

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
smolitor@julieherreralaw.com